**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

GOLDY THOMPSON,                  :   Case No. 2:25-cv-143
                                 :
    Plaintiff,                   :
                                 :
                                 :
vs.                              :   Chief District Judge Sarah D. Morrison
                                 :   Magistrate Judge Kimberly A. Jolson
                                 :
OHIO DEPARTMENT OF               :
REHABILITATION AND               :
CORRECTIONS, *et al*.,           :
                                 :
    Defendants.                  :

---

**ORDER AND REPORT AND RECOMMENDATION**

---

Plaintiff, a prisoner at Chillicothe Correctional Institution (CCI), has filed a *pro se* civil rights Complaint in this Court under 42 U.S.C. § 1983.  (Doc. 1-1).  Plaintiff names eighteen Defendants:  the Ohio Department of Rehabilitation and Correction (ODRC); CCI; Annette Chambers-Smith, Director of ODRC; CCI Warden Shoop; Chief Inspector Morrow; Inspector Lambert; Inspector Free; Captain Ramirez; Lieutenant Cannon; J. Currior; Unit Manager Ivey; T. Napier; Mailroom processors Mr. Spaiol, Ms. Coon, and Mr. Gillion; and Corrections Officers Patrick, Williams, and Strausbaugh.  By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.

This matter is before the Court for a *sua sponte* review of Plaintiff's Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  Having performed the initial screen, Plaintiff **MAY PROCEED** on his First Amendment legal mail claim against some

Defendants in their individual capacity, as well as in their official capacity to the extent Plaintiff seeks injunctive and declaratory relief. However, the Undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED**.

## I.    SCREENING OF THE COMPLAINT

### A.    Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by

a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even so, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("[D]ismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim [under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)].")

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

B.     **Allegations in the Complaint**

Plaintiff's Complaint consists of fifty numbered paragraphs, and Plaintiff does not separately delineate the specific claims he pleads. (Doc. 1-1). The Undersigned construes the Complaint as attempting to set forth First Amendment claims regarding the improper handling and

3

delivery of his legal mail and denial of his right to access the courts, denial of his informal complaints and grievances, retaliation by CCI staff, and violations of several administrative policies and rules regarding employee conduct.

To begin, Plaintiff alleges that ODRC's and CCI's legal mail policy violates his First Amendment rights. (*Id*. at ¶¶ 1–3). Plaintiff explains that on September 28, 2024, and October 16, 2024, CCI mailroom staff opened and made copies of his legal mail outside his presence. (*Id*. at ¶¶ 3–5). Defendant Williams delivered that mail through the regular mail process, and on the first occasion, delivered Plaintiff's legal mail to the wrong inmate. (*Id*.). After the second incident, Plaintiff began filing informal complaints and grievances. (*Id*. at ¶¶ 6–9). Plaintiff was informed that his mail was not treated as legal mail because it lacked the requisite control number required by ODRC administrative rules. (*Id*. at ¶ 16; *see also id.* at 24). According to Plaintiff, Defendants violated his right to access the courts and his right to confidentiality in a legal case. (*Id*. at ¶ 50).

Next, Plaintiff sets forth instances where corrections officers Patrick, Strausbaugh, Ivey, and Napier treated him unfairly or with disrespect in violation of several administrative policies and rules of employee conduct. (*Id*. at ¶¶ 21, 27, 29, 36–40). Plaintiff alleges that on December 18, 2024, and after an interaction with Defendant Napier, Plaintiff was "sent to the hole" for disrespecting Napier. (*Id*. at ¶¶ 36–40). Plaintiff states this action was retaliation for the prior informal complaints Plaintiff filed against Defendants Patrick, Free, and Ivey, as well as a conspiracy to cover-up their lies and disrespectful conduct. (*Id*.)

Many other paragraphs of the Complaint describe the individuals who investigated and/or processed Plaintiff's various ICR's and grievances related to the handling of his mail and his interactions with staff, as well as the outcomes of those proceedings. (*See, e.g.*, *id.* at ¶¶ 6–20, 22–26, 28, 30–35, 39–43, 45–46).

4

Plaintiff sues each Defendant in his or her individual and official capacity. Plaintiff seeks injunctive relief requiring prison staff to handle his legal mail properly (and in his presence), as well as monetary damages. (*Id*. at 14).

**C. Analysis**

The Undersigned construes Plaintiff's Complaint as bringing claims for violating his First Amendment rights to receive legal mail and to access the courts. Plaintiff also asserts claims for retaliation, harassment, and denial of grievances. As discussed below, the Undersigned concludes that Plaintiff **MAY PROCEED** on his First Amendment legal mail claim, but not his claims regarding access to the courts or denial of grievances. His claims regarding harassment and retaliation should be severed from this action.

*1. Legal Mail Claims*

Plaintiff claims ODRC and CCI have instituted policies and procedures that violate his First Amendment rights regarding legal mail. Plaintiff alleges that on September 28, 2024, and October 16, 2024, CCI staff opened and made copies of his legal mail outside his presence. (Doc. 1-1 at ¶¶ 2, 4–5). Plaintiff alleges "[t]he Mailroom-Processors (who are responsible for sorting mail, and either copying and sending to units, or sending legal mail to mailroom for inmates to sign and pickup), including Mr. Spaiol, Ms. Coon, and Mr. Gillion, took my clearly marked 'legal mail,' copied it against policy then sent it to my unit" where Defendant Williams delivered one of the items to the wrong inmate. (*Id*. at ¶ 47; *see also id*. at ¶¶ 4–5).

To the extent Plaintiff asserts interference with his privileged legal mail, his claim may proceed. "A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Knop v.*

5

*Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)).  "However, prison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights."  *Id.* at 873–874.  When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts."  *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts[.]")).  "In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner."  *Id.* at 874 (citation omitted).

As Defendants for this claim, Plaintiff names ODRC; CCI; Director Chambers-Smith; Warden Shoop; Captain Ramirez; mailroom processors Mr. Spaiol, Ms. Coon, and Mr. Gillion; and Corrections Officer Williams.  Although Plaintiff does not specifically describe or identify the legal mail at issue within the body of his Complaint, the Court draws certain inferences from the attached documents.  It appears the first item of mail at issue was sent from the United States District Court for the Northern District of Ohio.  (Doc. 1-1 at 16–20).  The second item appears to be a letter from Plaintiff's prior attorney.  (*Id*. at 21).  So, for purposes of screening the Complaint, the Undersigned takes Plaintiff at his word that the mail in question was "legal mail" and also infers that Plaintiff previously requested his incoming legal mail be opened in his presence.

At this stage in the proceedings, and without the benefit of briefing by the parties, the Undersigned concludes that Plaintiff's First Amendment claims for interference with his privileged legal mail against Defendants Chambers-Smith, Warden Shoop, Williams, Spaiol, Coon, and Gillion in their official capacities for declaratory and injunctive relief **may proceed for further development**. So may Plaintiff's claims against Defendants Williams, Spaiol, Coon and Gillion in their individual capacities for money damages. The Undersigned advises Plaintiff that this is only a preliminary determination. The Undersigned has not made a determination as to the merits of the claims being allowed to proceed, nor has the Undersigned considered any potential defenses. Defendants are not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

Turning to Plaintiff's other allegations, the Undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED**.

2. *Access to the Courts*

Prisoners also have a fundamental right of access to the courts under the First Amendment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). "The United States Supreme Court has established that, in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial." *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) (citing *Lewis*, 518 U.S. at 349). "Actual injury" is not established "without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Root v. Towers*, No. 00-1527, 2000 WL 1888734, at *1 (6th Cir. Dec. 21, 2000). "In other words, an inmate who claims that his access to courts was denied fails to state a claim 'without any showing of prejudice to his litigation.'" *Wilburn*, 43 F.

7

App'x. at 733 (quoting *Kensu*, 87 F.3d at 175); *see also Lewis v. Cook Cnty. Bd. of Comm'rs*, 6 F. App'x. 428, 430 (7th Cir. 2001) (saying a plaintiff could not prevail when he did "not describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail").

Here, Plaintiff has not alleged any facts showing he suffered actual injury to pending litigation as a result of the opening of his legal mail, such as showing he has been unable to file court pleadings, missed court deadlines, or had a case dismissed in any nonfrivolous legal proceeding. Within the Complaint, Plaintiff does not even reference the case or legal proceeding that was allegedly impacted. Without an allegation of actual injury, the Complaint fails to state a claim for denial of access to the courts under the First Amendment. Consequently, the Undersigned **RECOMMENDS** this claim be **DISMISSED**.

### 3. *ODRC and CCI Are Not Proper Defendants*

ODRC and CCI are not proper Defendants in this action. As state agencies, ODRC and CCI are absolutely immune from suit in this Court by virtue of the Eleventh Amendment to the United States Constitution. *See Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) (holding Eleventh Amendment sovereign immunity applies to "state agents and instrumentalities"); *Tackett v. Ohio Dep't of Rehab. & Corr.*, 2011 WL 5076401 at *3 (S.D. Ohio Oct. 25, 2011) ("ODRC is a state agency and therefore enjoys Ohio's sovereign immunity."). More still, "Section 1983 creates liability for 'persons' who deprive others of federal rights under color of law. Only a 'person' faces liability under the statute." *Hohenberg v. Shelby Cnty.*, 68 F.4th 336, 342 (6th Cir. 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989)). A state agency is not a "person" subject to suit under 42 U.S.C. § 1983. *Will*, 491 U.S. at 70–71 (1989). Accordingly, ODRC and CCI should be **DISMISSED with prejudice**.

4. *Official Capacity Claims for Money Damages*

The claims against all Defendants in their official capacities for money damages must be dismissed. The State of Ohio's Eleventh Amendment immunity also extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002). A suit against Defendants in their official capacity as employees of ODRC and CCI would be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation omitted)). Therefore, the Court finds that Defendants are immune from suit in their official capacities to the extent Plaintiff seeks monetary damages. The Undersigned **RECOMMENDS** that all official capacity claims for money damages be **DISMISSED with prejudice**.

5. *Respondeat Superior*

To the extent Plaintiff seeks to hold ODRC Director Annette Chambers-Smith, Warden Shoop, and Captain Ramirez responsible in their individual capacity based only on their supervisory roles, *respondeat superior* does not apply to Section 1983 claims and may not serve as the basis for liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell*, 436 U.S. at 691–92; *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Liability will not be established against a supervisor unless the

9

supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, Plaintiff's only allegations against Defendants Chambers-Smith, Shoop, and Ramirez in their individual capacity are that these Defendants "failed to maintain appropriate supervision" over the employees responsible for handling Plaintiff's legal mail and grievances, and those employees who directly violated his constitutional rights. (Doc. 1-1 ¶¶ 48–49). There are simply no allegations in the Complaint that would allow these named Defendants to be held liable on that basis. Accordingly, the Undersigned **RECOMMENDS** that all individual capacity claims against Defendants Chambers-Smith, Shoop, and Ramirez be **DISMISSED**.

6. *Denial of Informal Complaints and Grievances*

Although not definitive, the Undersigned finds it possible that Plaintiff attempts to set forth a claim regarding the handling, investigation, and/or resolution of his various ICR's and grievances against Defendants Morrow, Lambert, Free, and Cannon. In the Complaint, Plaintiff describes the filing and outcome of several ICR's and grievances, as well as the individuals responsible for the determinations. (*See, e.g.*, Doc. 1-1 at ¶¶ 6–46).

"Prison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted); *see also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (finding the "denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983"). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee*, 199 F.3d at 300. Thus, Plaintiff cannot hold any Defendant liable simply for failing to correct the violations of others, at the grievance stage or otherwise. *See also Pounds v. Myers*, 76

10

F. App'x 630 (6th Cir. 2003) (finding defendant "could not be held liable merely on the basis that they failed to remedy a grievance"). These claims, too, should be **DISMISSED**.

### 7. *Remaining Claims*

Plaintiff's remaining claims for harassment and retaliation should be dismissed without prejudice because they are improperly joined in this action. Throughout the second half of the Complaint, Plaintiff alleges that the behavior of Defendants Currior, Free, Ivey, Napier, Patrick, and Strausbaugh violated state or ODRC administrative policies regarding employee conduct. (*See, e.g.*, Doc. 1-1 at ¶¶ 21–49). Specifically, Plaintiff alleges that Defendants Currior, Free, Ivey, Napier, Patrick, and Strausbaugh either harassed him or failed to properly address such behavior in violation of ODRC policy "31-SEM-02" and other rules of employee conduct. (*See id.*). Plaintiff alleges that he was retaliated against by Defendants Napier, Ivey, and Free to cover up harassing conduct towards Plaintiff and because of the ICRs Plaintiff filed about that conduct. (*Id.* at ¶¶ 35–41).

None of these alleged incidents relate to the handling of Plaintiff's legal mail. A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

> Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.

*White v. ODRC Dir.*, No. 1:24-cv-270, 2024 WL 5096095, at *5-6 (S.D. Ohio Nov. 4, 2024), *report and recommendation adopted*, No. 1:24-cv-00270, 2024 WL 5090692 (S.D. Ohio Dec. 12, 2024) (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C.

§ 1915(g)); *Harris v. Erdos*, No. 1:21-cv-104, 2022 WL 3053496, at *6 (S.D. Ohio Aug. 3, 2022) (recognizing that "any judicial economy gained by consolidating separate claims or defendants into a single action is quickly lost when those claims or defendants are unrelated" and "where, as here, the plaintiff is incarcerated, interpreting the joinder provisions too expansively would foil the explicit purpose of the Prison Litigation Reform Act").

"In the case of misjoinder, a court has two options: it may (1) drop misjoined parties 'on just terms'; or (2) sever any claim against a party." *Harris*, 2022 WL 3053496, at *6 (citing Fed. R. Civ. P. 21; *Roberts v. Doe*, No. 16-2082, 2017 WL 3224655, at *2 (6th Cir. Feb. 28, 2017)); *see also Cage v. Michigan*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) ("[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." (citations omitted)). Under Rule 21 of the Federal Rules of Civil Procedure, courts have "broad discretion 'to order a severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp.2d 743, 781 (E.D. Mich. 2009) (alteration in original) (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Here, Plaintiff's claim regarding the improper handling of his legal mail forms the primary basis of this lawsuit; Plaintiff does not allege Defendants Currior, Ivey, Napier, Patrick, or Strausbaugh had any involvement in his mail claims. The only involvement Defendant Free had was in the processing of Plaintiff's ICR and grievance regarding the mail, and the Court has determined that those allegations fail to state a claim for relief. And Plaintiff has not pled any facts suggesting any of the allegations set forth in paragraphs twenty-one through forty-six of the Complaint relate even remotely to his issues with legal mail. Therefore, the Undersigned finds

12

Plaintiff's retaliation and harassment claims are improperly joined in this action because they are factually distinct and do not arise out of the same transaction, occurrence, or series of transactions or occurrences as his legal mail claims.

Because Plaintiff has improperly included these claims in this action that primarily challenges the handling of his legal mail, the Undersigned **RECOMMENDS** that these claims be **SEVERED** and **DISMISSED without prejudice**, allowing Plaintiff to re-file a separate action or actions including such claims if he so wishes. *See* Fed. R. Civ. P. 20(a)(2); 21.

## II.      CONCLUSION

### IT IS THEREFORE RECOMMENDED THAT:

The claims in Plaintiff's Complaint be **DISMISSED with prejudice** as to Defendants ODRC and CCI, as well as all claims seeking money damages against any Defendant in his or her official capacity. It is further **RECOMMENDED** that Plaintiff's claims regarding access to the courts and denial of grievances should be **DISMISSED without prejudice**. Plaintiff's claims for harassment and retaliation should be **SEVERED** and **DISMISSED without prejudice**. Fed. R. Civ. P. 20 (a)(2); 21. To clarify, this means that Defendants ODRC, CCI, Morrow, Lambert, Free, Ramirez, Cannon, Currior, Ivey, Napier, Patrick, and Strausbaugh should be **DISMISSED** from this case.

### IT IS THEREFORE ORDERED THAT:

1.     Plaintiff may **PROCEED** at this juncture only on his First Amendment legal mail claim against Defendants Chambers-Smith, Warden Shoop, Williams, Spaiol, Coon, and Gillion in their official capacity for declaratory and injunctive relief, and against Defendants Williams, Spaiol, Coon, and Gillion in their individual capacity, regarding the handling and processing of his legal mail.

2.      The United States Marshal shall serve a copy of the Complaint (Doc. 1-1), summons, and this Report and Recommendation upon Defendants Chambers-Smith, Shoop, Williams, Spaiol, Coon, and Gillion as directed by Plaintiff (Docs. 1-3, 1-4), with costs of service to be advanced by the United States.

3.      The Clerk is **DIRECTED** to mail Plaintiff a copy of the *Pro Se* Handbook.

4.      Plaintiff shall serve upon Defendants Chambers-Smith, Shoop, Williams, Spaiol, Coon, and Gillion or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

5.      Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.


Date: April 29, 2025                    /s/ Kimberly A. Jolson
                                        KIMBERLY A. JOLSON
                                        UNITED STATES MAGISTRATE JUDGE


## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely

14

motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).